Gregory D. Phillips (4645)
Cody W. Zumwalt (7197)
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
(801) 366-7471

**Attorneys for Plaintiffs**

FILED
CLERK, U.S. DISTRICT COURT

29 OCT 02 PM 5: 45

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | | |
|---|---|---|
| **SMITH & WESSON HOLDING CORPORATION,** a  Nevada Corporation, and; **SMITH & WESSON CORP.,** a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> **WILLIAM YORK,**  an individual aka **OLIVER SUDDEN**, an individual, and; **AMALGAMATED DIVERSITIES**, an entity of unknown nature. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **VERIFIED COMPLAINT** <br><br> Judge <br><br> Civil Action No. **2:02 C V - 1178 JTG** |

Plaintiffs Smith & Wesson Holding Corporation and Smith & Wesson Corp., (herein referred to collectively as "Smith & Wesson") file this Verified Complaint against William York, Oliver Sudden, and Amalgamated Diversities (herein referred to as the "Defendants"), and for their claims for relief state as follows:

### NATURE AND SUBSTANCE OF THIS ACTION

1.       This lawsuit involves quintessential cyberpiracy and trademark infringement.

The Defendants have registered the domain name SMITHWESSON.COM, a domain name that blatantly misappropriates the trademarked and world-famous trademark Smith & Wesson®, and then have advertised the domain name for sale at fifty thousand ($50,000) dollars.

2.      The World Intellectual Property Organization ("WIPO"), an entity organized under the auspices of the United Nations to protect intellectual property, condemned the widespread epidemic of cyberpiracy.  WIPO noted that "[f]amous and well-known marks have been the special subject of predatory and parasitical practices by a minority of domain name registrants acting in bad faith."  WIPO Interim Report on the Internet, December 23, 1998, at p. iii; WIPO Interim and Final Report available at <http://wipo2.wipo.int>.  "These practices include the deliberate, bad faith registration as domain names of well-known and other trademarks in the hope of being able to sell the domain names to the owners of those marks, or simply to take unfair advantage of the reputation attached to those marks."  Id. at p. 6.

3.      In response to the widespread epidemic of cyberpiracy, Congress passed, and the President signed into law, the Anticybersquatting Consumer Protection Act (the "ACPA").  In passing the ACPA, Congress noted that the ACPA was designed to address the increasing epidemic of cyberpirates who "registered, trafficked in, or used the offending domain name with bad-faith intent to profit from the goodwill of a mark belonging to someone else."  Conference Report H.R. No. 106-464 (Nov. 9, 1999).  As Senator Hatch observed in supporting passage of the ACPA:

> Mr. President, today the Senate considers legislation to address the serious threats to American consumers, businesses, and the future of electronic commerce, which derive from the deliberate, bad-faith registration of Internet domain names in violation of the rights of trademark owners.  For the Net-savvy, this burgeoning form of cyber-abuse is known as "cybersquatting."  For the average consumer, it is simply fraud, deception, and the bad-faith trading on the goodwill of others.

Congressional Record–Senate, August 5, 1999, S10515.

4.      Section 3002 of the ACPA provides in pertinent part:

CYBERPIRACY PREVENTION

2

A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person –
    (i) has a bad faith intent to profit from that mark . . .; and
    (ii) **registers, traffics in, or uses a domain name** that –
    . . .
    (II) in the case of a **famous mark** that is famous at the time of registration
of the domain name, is identical or confusingly similar to or dilutive of that mark.

(emphasis added).

5.      In this lawsuit, Smith & Wesson asserts claims for Cyberpiracy, Trademark Dilution, and Trademark Infringement under the Trademark Act of 1946, as amended, 15 U.S.C. §1051 *et seq.* (the "Lanham Act"), including the Anticybersquatting Consumer Protection Act, ("ACPA"), 15 U.S.C. § 1125(d)(1)(A).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. §1051 *et seq.* (the "Lanham Act"), and more specifically, the ACPA, 15 U.S.C. §1125(d). Furthermore, jurisdiction is proper in this District pursuant to 28 U.S.C.§§ 1331, 1338(a) by virtue of this action being a question of Federal Law arising under the Trademark Laws of the United States, United States Code Title 15.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§1391(b), 1391(c) and 1391(d) because the Defendants conduct business in this district.

## THE PARTIES

8.      Smith & Wesson Holding Corporation is a corporation registered under the laws of the State of Nevada, and has its principal place of business at 14500 North Northsight Boulevard #116, Scottsdale, Arizona, 85260-3661.

9.      Smith & Wesson Corp. is a corporation registered under the laws of the State of Delaware and has its principal place of business at 2100 Roosevelt Avenue, Springfield, MA 01104.

10.     Defendant William York is a well known and infamous cyberpirate who has registered numerous domain names misappropriating world-famous trademarks such as Porsche®, Volkswagen®, and others.  In fact, Volkswagen recently obtained a Judgment against William York and Amalgamated Diversities in the United States District Court for the Eastern District of Michigan relating to their misappropriation and attempts to traffic in the domain names VW-BUG.COM, VW-BEETLE.COM, VWBEETLEPARTS.COM, VWBUGPARTS.COM, VOLKSWAGENBUG.COM, and VOLKSWAGENPARTS.COM.  A true and correct copy of the Judgment is attached hereto as Exhibit A.  William York uses the address of Box 1000, Delta, Utah 84624.

11.     Upon information and belief, defendant Oliver Sudden is an alias used by defendant William York to insulate William York from liability from misappropriating famous trademarks such as Smith & Wesson® in domain names.  Upon information and belief, the domain name SMITHWESSON.COM was originally registered by William York and was transferred to Oliver Sudden to insulate William York from liability for cyberpiracy.

12.     Defendant Amalgamated Diversities is an entity of unknown origin doing business at Box 1000, Delta, Utah  84624.  Defendant Amalgamated Diversities is also a well-known cyberpirate, and as set forth above, Volkswagen recently obtained a Judgment against Amalgamated Diversities for cyberpiracy.  The domain name SMITHWESSON.COM is presently registered to Defendants Amalgamated Diversities and Oliver Sudden.  A true and correct copy of the whois for SMITHWESSON.COM is attached hereto as Exhibit B.

4

## THE SMITH & WESSON MARKS

13.     Smith & Wesson first obtained a United States Trademark Registration for the trademark Smith & Wesson® in 1914, Registration No. 95164, and has obtained numerous other United States Trademark Registrations for the trademark SMITH & WESSON®, including Registration Numbers 1191065, 1000546, 1704640, 1125756, 1511511, and 1069977. True and correct copies of the electronic versions of these Trademark Registrations from the United States Patent and Trademark Office are attached hereto as Exhibit C.

14.     Smith & Wesson's registrations for the trademark Smith & Wesson® are valid, unrevoked, subsisting, and incontestible, and constitute prima facie evidence of Smith & Wesson's exclusive ownership of the trademark Smith & Wesson® as well as the validity of Smith & Wesson's exclusive rights pursuant to 15 U.S.C. § 1115.

15.     Smith & Wesson uses the trademark Smith & Wesson® throughout the world to identify pistols, revolvers, guns, rifles, ammunition, educational services, handcuffs, holsters, sunglasses and various other products and services.

16.     Smith & Wesson has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the trademark Smith & Wesson® throughout the world.  As a result of such advertising and expenditures, Smith & Wesson has established considerable goodwill in the trademark Smith & Wesson®.  The trademark Smith & Wesson® has become widely known and recognized throughout the world as a symbol of high quality firearms, and other goods and services.   The trademark Smith & Wesson® is world-famous and distinctive, and has become associated by the consuming public exclusively with Smith & Wesson. The trademark Smith & Wesson®, and the goodwill associated with the trademark, is an invaluable asset of substantial and inestimable worth to Smith & Wesson.

## THE INTERNET PRESENCE OF SMITH & WESSON

17.    Smith & Wesson uses the trademark Smith & Wesson in its primary domain

names SMITHANDWESSON.COM and SMITH-WESSON.COM  These Internet sites provide

information on virtually every Smith & Wesson product, including but not limited to pistols,

revolvers, mountain bikes, apparel, and education.  A true and correct copy of the Smith &

Wesson homepage from the websites at SMITHANDWESSON.COM and SMITH-

WESSON.COM is attached hereto as Exhibit D.  By virtue of Defendants' misappropriation of

SMITHWESSON.COM, Smith & Wesson has been prevented and precluded from using this

domain name on the Internet.

## DEFENDANTS' CYBERPIRACY AND VIOLATIONS OF SMITH & WESSON'S TRADEMARK RIGHTS

18.    On the website AA-OK.COM, a website registered to Oliver Sudden and

Amalgamated Diversities (See whois printout attached hereto as Exhibit E), Defendants advertise

for sale the domain name SMITHWESSON.COM for $50,000.  A true and correct copy of the

website at AA-OK.COM is attached hereto as Exhibit F.

19.    In addition to advertising for sale the domain name SMITHWESSON.COM,

Defendants have listed for sale the following other domain names:

| | |
|---|---|
| COLTFIREARMS.COM | $30,000 |
| COLTPISTOLS.COM | $30,000 |
| HECKLERKOCH.COM | $20,000 |
| HECKLER-KOCH.COM | $20,000 |
| M1CARBINE.COM | $10,000 |
| AK-74.COM | $10,000 |
| AK-47.COM | $20,000 |
| AK74.COM | $10,000 |
| TAMALES.COM | $50,000 |

See Exhibit E hereto.

20.    Section 3002 of the ACPA provides in pertinent part:

6

CYBERPIRACY PREVENTION

A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person –
    (i) has a bad faith intent to profit from that mark . . .; and
    (ii) registers, traffics in, or uses a domain name that –
    (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
    (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

15 U.S.C. § 1125(d).

21.    Defendants have shown a bad faith intent to profit from the trademark Smith & Wesson®.

22.    In violation of the ACPA, Defendants acquired or registered the domain name SMITHWESSON.COM, without any trademark or other intellectual property rights in the trademark Smith & Wesson®.  The only conceivable reason for the Defendants' registration and misappropriation of the trademark Smith & Wesson® is to profit from the goodwill and reputation of Smith & Wesson.

## COUNT I

### VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

23.    Smith & Wesson repeats and incorporates by reference the allegations above.

24.    The trademark Smith & Wesson® is protected by the Lanham Act.

25.    The domain name SMITHWESSON.COM was registered long after Smith & Wesson adopted the trademark Smith & Wesson® and long after the trademark Smith & Wesson® became distinctive and famous.

26.    The domain name SMITHWESSON.COM is identical to, confusingly similar to, and dilutive of the trademark Smith & Wesson®.

27.     The ACPA provides that a showing of bad faith intent regarding registration, or use of domain names containing the trademark Smith & Wesson®, is a violation of the ACPA.

28.  By reason of the foregoing, Defendants have violated and are continuing to violate 15 U.S.C. §1125(d)(1).

29.     The registration or use of SMITHWESSON.COM by Defendants shows a bad faith intent to profit from the goodwill of the trademark Smith & Wesson® and, thus, constitutes cyberpiracy in violation of the ACPA, entitling Smith & Wesson to statutory damages, damages, attorneys fees and costs, and preliminary and permanent injunctive relief.

## COUNT II

## TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

30.     Smith & Wesson repeats and incorporates by reference the allegations in above.

31.     The trademark Smith & Wesson® has become famous and distinctive throughout the world as a result of Smith & Wesson's continuous and exclusive use of the trademark in connection with Smith & Wesson's products and services.

32.     Because Smith & Wesson's products and services have gained a reputation for superior quality and excellence, the Smith & Wesson Marks (which are always used in connection with Smith & Wesson's products and services) have gained substantial fame, renown, and good will.

33.     The domain name SMITHWESSON.COM misappropriates the trademark Smith & Wesson®, and has caused and continues to cause irreparable injury to and dilution of the trademark Smith & Wesson®'s distinctive quality in violation of Smith & Wesson's rights under 15 U.S.C. Section 1125(c).  The domain name SMITHWESSON.COM dilutes, blurs, tarnishes,

and whittles away the distinctiveness of the trademark Smith & Wesson®, and further misappropriates the good will of the trademark Smith & Wesson®.

34.     As a direct and proximate result, Smith & Wesson has suffered irreparable harm including harm to the value and good will associated with the trademark Smith & Wesson®. Unless the Domain Name is transferred and/or forfeited to Smith & Wesson, and unless Defendants are preliminarily and permanently enjoined from its wrongful use of the trademark Smith & Wesson®, Smith & Wesson will continue to be irreparably harmed.

35.     Smith & Wesson has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer and is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their respective agents, servants and employees, and all persons acting thereunder, in concert therewith or on their behalf, from registering, maintaining or using as a domain name, or within a domain name, any trademark of Smith & Wesson, or any colorable imitation thereof.

## COUNT III

### (FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING UNDER 15 U.S.C. § 1114)

36.     Smith & Wesson repeats and incorporates by reference the allegations in above.

37.     Despite Smith & Wesson's well-known prior rights in the trademark Smith & Wesson®, Defendants have used and continue to use, without Smith & Wesson authorization, the trademark Smith & Wesson®.

38.     Defendants' actions constitute willful infringement of Smith & Wesson's exclusive rights in the trademark Smith & Wesson® in violation of 15 U.S.C. § 1114.

39.     Defendants' use of the trademark Smith & Wesson® has been and continues to be done with the intent to cause confusion, mistake, and to deceive consumers.

40.     As a direct and proximate result of Defendants' conduct, Smith & Wesson has suffered irreparable harm.  Unless Defendants are restrained from further infringement of the trademark Smith & Wesson®, Smith & Wesson will continue to be irreparably harmed.

41.     Smith & Wesson has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' acts are allowed to continue. Defendants have used and continue to use the trademark Smith & Wesson® willfully and with the intent to trade on the reputation and goodwill of Smith & Wesson, and the trademark Smith & Wesson®s.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

42.     As a direct and proximate result of Defendants' conduct, Smith & Wesson is entitled to damages, the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from its infringing use of the trademark Smith & Wesson® pursuant to 15 U.S.C. § 1117.

WHEREFORE, Smith & Wesson Holding Corporation and Smith & Wesson Corporation request that the Court enter judgment and relief against the Defendants as follows:

        a.     Ordering that the domain name SMITHWESSON.COM, and any other domain names registered by Defendants misappropriated the trademarks of Smith & Wesson, be transferred to Smith & Wesson, or alternatively be cancelled or forfeited.

        b.     Enjoining Defendants, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with it, from:

               (1)    making any use of the domain name SMITHWESSON.COM

10

(2)     registering any other domain names incorporating, in whole or in part, any word or mark identical or similar to the trademark Smith & Wesson®;  and

(3)     using any of the trademarks of Smith & Wesson in the websites and/or metatags of any website owned or operated by or affiliated with Defendants;

c.     Awarding Smith & Wesson statutory damages in the amount of $100,000, pursuant to the provisions of 15 U.S.C. § 1117;

d.     Awarding Smith & Wesson damages in the amount of $500,000, treble damages pursuant to 15 U.S.C. § 1117, an equitable accounting and disgorgement  of all revenues and/or profits wrongfully derived by Defendants from their infringing use of the trademark Smith & Wesson® pursuant to 15 U.S.C. § 1117;

e.     Awarding Smith & Wesson all costs of the action and reasonable attorneys fees pursuant to the provisions of 15 U.S.C. § 1117; and

f.     Awarding such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 29th day of October, 2002.

HOWARD, PHILLIPS & ANDERSEN

By: _____
Gregory D. Phillips

11

## <u>VERIFICATION</u>

Daniel A. Larson, under penalty of perjury of the laws of the United States, states: That he is General Counsel of Plaintiff Smith & Wesson Holding Company, that he has read and is familiar with the contents of the foregoing Verified Complaint; and that to the best of his knowledge, information, and belief the allegations thereof are true and correct.

Executed this _28_ day of October 2002 in Scottsdale, Arizona

Daniel A. Larson

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.